# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JAMES CLEM )
192 Foothill Road )
Pismo Beach, CA, 93449, ) Case No. 16-cv-3215
Derivatively on Behalf of AMERICAN )
CAPITAL AGENCY CORP., )
) VERIFIED STOCKHOLDER DERIVATIVE
       Plaintiff, ) COMPLAINT FOR BREACH OF
) FIDUCIARY DUTYAND WASTE OF
) CORPORATE ASSETS
  v. )
)
GARY KAIN )
10504 Patrician Woods Court )
Great Falls, VA 22066, )
)
PETER J. FEDERICO )
604 Kentland Drive ) <u>DEMAND FOR JURY TRIAL</u>
Great Falls, VA 22066, )
)
PRUE B. LAROCCA )
1363 28th Street, NW, Apt. 1 )
Washington, DC 20007, )
)
MORRIS A. DAVIS )
24 Inwood Circle )
Chatham, NJ 07928, )
)
LARRY K. HARVEY )
12844 Rose Grove Drive )
Herndon, VA 20171, )
)
MALON WILKUS )
5524 Pembroke Road )
Bethesda, MD 20817, )
)
JOHN R. ERICKSON )
225 Winter Brook Drive )
Walkersville, MD 21793, )
)
SAMUEL A. FLAX )
5205 Chamberlin Avenue )
Chevy Chase, MD 20815, )
)
ROBERT M. COUCH )
8 Clubview Drive )
Mountain Brook, AL 35223, )
)
RANDY E. DOBBS )
195 Village View Drive )
Sunset, SC 29685, )
)
[Caption continued on next page] )
_____ )

ALVIN N. PURYEAR            )
306 Rivers Edge              )
Williamsburg, VA 23185,      )
                           )
AMERICAN CAPITAL ASSET   )
MANAGEMENT, LLC        )
2 Bethesda Metro Center, 14th Floor  )
Bethesda, MD 20814,        )
                           )
                 Defendants,    )
                           )
    -and-                 )
                           )
AMERICAN CAPITAL AGENCY CORP. )
2 Bethesda Metro Center, 12th Floor  )
Bethesda, MD 20814,        )
a Delaware corporation,       )
                           )
             Nominal Defendant.   )

## SUMMARY OF THE ACTION

1.     This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant American Capital Agency Corp. ("AGNC" or the "Company") against certain of its officers and directors for breaches of fiduciary duties and other violations of law.  These wrongs resulted in hundreds of millions of dollars in unfair fee payments to a related party, which the Company then grossly overpaid to acquire, as well as damages to AGNC's reputation, goodwill, and standing in the business community.

2.     AGNC is a real estate investment trust ("REIT") that primarily invests on a leveraged basis in agency mortgage-backed securities ("agency MBS").  As a REIT, AGNC is required by law to pay at least 90% of its profits as dividends.  According to the Company's annual filings with the U.S. Securities and Exchange Commission ("SEC"), AGNC's "principal objective is to preserve [its net book value] … while generating attractive risk-adjusted returns for distribution to [its] stockholders through regular monthly dividends…."

3.     Until recently, the Company was externally managed by a related-party, AGNC Management, LLC (the "AGNC Manager").  American Capital Mortgage Management LLC

("ACMM") is the former parent company of the AGNC Manager, defendant American Capital Asset Management, LLC ("ACAM"), in turn, owned ACMM and is a wholly owned portfolio company of American Capital, Ltd. ("American Capital").   American Capital is the ultimate parent company of AGNC, the AGNC Manager, ACMM, and ACAM, as well as several other related parties.   Prior to the various related companies' individual Initial Public Offering ("IPO") dates, American Capital established the administrative service agreements for its companies. Pursuant to these agreements, AGNC and various other companies have no dedicated employees of their own.   Rather, the related managers of each company (such as the AGNC Manager) are responsible for the business activities and day-to-day operations of each company, and multiple officers and directors are shared between AGNC, the AGNC Manger, and American Capital, among several other American Capital companies.   While the AGNC Manager was responsible for administering AGNC's business activities and day-to-day operations, it was subject to the supervision and oversight of AGNC's Board of Directors (the "Board"), as noted in various AGNC Annual Reports.

4.      Through ACAM, ACMM, and the AGNC Manager, several Individual Defendants (as defined herein) have long improperly funneled millions of dollars away from AGNC; money which should have been paid to AGNC stockholders as dividends.   In particular, the Board agreed to force the Company to pay the AGNC Manager exorbitant fees pursuant to a management agreement between AGNC and the AGNC Manager (the "Management Agreement").   These fees were then paid up the chain to the Individual Defendants with positions at ACAM and ACMM, and American Capital.

5.      At the same time the Company was paying theses exorbitant fees, AGNC's performance significantly deteriorated.   One of the key metrics for the Company's performance is its dividend.   Since 2012, the Board has slashed AGNC's dividend by more than 50%, going

from $5 per share per year to $2.16 per share per year (annualized to reflect the Company's most recent dividend of $0.18 per share).   Although the Board had contractual rights to either terminate the Management Agreement as unfair or force the AGNC Manager to charge fair fees, AGNC instead continued to pay the AGNC Manager well over $100 million per year despite these abysmal results.

6.       After years of funneling hundreds of millions of dollars to the AGNC Manager, on May 23, 2016, AGNC announced that it had entered into a definitive transaction under which AGNC would acquire ACMM, the parent company of the AGNC Manager, for a staggering $562 million in cash and become an internally-managed REIT (the "Internalization").

7.       Documents filed by the Company with the SEC in connection with the acquisition shows that AGNC has been paying a blatantly unfair amount to the AGNC Manager for its services.   For example, on June 1, 2016, AGNC filed a presentation stating that AGNC Management's fees for 2016 were estimated to be approximately $108 million.   The Company estimated that it would only cost between $40 and $45 million to perform these services internally.   Accordingly, AGNC has been paying AGNC Management more than twice the appropriate amount.

8.       Plaintiff now brings this action to recoup the improper amounts that the Company has been paying AGNC management from those responsible for the wrongdoing detailed herein.

## JURISDICTION AND VENUE

9.       This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.   This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) AGNC maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to AGNC, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

12. Plaintiff James Clem was a stockholder of AGNC at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current AGNC stockholder. Plaintiff is a citizen of California.

**Nominal Defendant**

13. Nominal Defendant AGNC is a Delaware-incorporated REIT, with principal executive offices at 2 Bethesda Metro Center, 12th Floor, Bethesda, Maryland. Accordingly, AGNC is a citizen of Delaware and Maryland. AGNC primarily earns income from investing in agency MBS, which consist of residential mortgage pass-through securities and collateralized mortgage obligations for which the principal and interest payments are guaranteed by a

government-sponsored enterprise.   The Company also invests in other assets related to agency securities, and up to 10% in non-agency and commercial mortgage-backed securities.   AGNC's day-to-day operations were managed by the AGNC Manager until July 1, 2016, at which point the Company completed its acquisition of the AGNC Manager thus internalizing its management.   The Company works in tandem with its sister company, American Capital Mortgage Investment Corp. ("MTGE"), which is similarly managed by American Capital MTGE Management, LLC (the "MTGE Manager").   Prior to the formation of a wholly owned captive broker-dealer subsidiary, Bethesda Securities, LLC ("BES"), in 2015, AGNC had no employees. As of December 31, 2015, BES had three employees.

**Defendants**

14.     Defendant Gary Kain ("Kain") is AGNC's Chief Executive Officer ("CEO") and a director and has been since March 2016; President and has been since April 2011; and Chief Investment Officer and has been since January 2009.   Defendant Kain was also AGNC's Senior Vice President from January 2009 to April 2011.   Defendant Kain is the AGNC Manager's President and has been since April 2011.   Defendant Kain is the MTGE's CEO and a director and has been since March 2016; and President and Chief Investment Officer and has been since March 2011.   Defendant Kain is also the MTGE Manager's President and has been since April 2011.   Defendant Kain is a citizen of Virginia.

15.     Defendant Peter J. Federico ("Federico") is AGNC's Chief Financial Officer ("CFO") and Executive Vice President and has been since July 2016.   Defendant Federico was also AGNC's Senior Vice President and Chief Risk Officer from June 2011 to July 2016. Defendant Federico is the AGNC Manager's Executive Vice President and Treasurer and has been since at least July 2016.   Defendant Federico was also the MTGE Manager's Senior Vice President and Chief Risk Officer from July 2011 to at least July 2016.   Defendant Federico is

MTGE's Executive Vice President and CFO and has been since July 2016.  Defendant Federico was also MTGE's Senior Vice President and Chief Risk Officer from May 2011 to July 2016. Defendant Federico is the MTGE Manager's Executive Vice President and Treasurer and has been since at least July 2016.  Defendant Federico was also the MTGE Manager's Senior Vice President and Chief Risk Officer from May 2011 to at least July 2016.  Defendant Federico is a citizen of Virginia.

16.     Defendant Prue B. Larocca ("Larocca") is AGNC's Lead Independent Director and has been since at least July 2016, Chairman of the Board and has been since May 2016, and a director and has been since February 2013.  Defendant Larocca was also a MTGE director from February 2013 to May 2016.  Defendant Larocca is a member of the Audit and Compensation and Corporate Governance Committees and has been since at least March 2014. Defendant Larocca is a citizen of Washington, D.C.

17.     Defendant Morris A. Davis ("Davis") is an AGNC director and has been since at least May 2008.  Defendant Davis was also AGNC's Lead Independent Director from at least April 2010 to at least March 2013.  Defendant Davis was MTGE's Lead Independent Director and a director from at least March 2013 to May 2016.  Defendant Davis is the Chairman of the Compensation and Corporate Governance Committee and has been since at least July 2016, and a member of the Compensation and Corporate Governance Committee and has been since at least March 2009.  Defendant Davis is a member of the Audit Committee and has been since at least July 2016, and was previously a member of the Audit Committee from at least March 2009 to at least March 2013.  Defendant Davis is a citizen of New Jersey.

18.     Defendant Larry K. Harvey ("Harvey") is an AGNC director and has been since at least May 2008.  Defendant Harvey is an American Capital Senior Floating, Ltd. ("ACSF") director and has been since January 2014.  Defendant Harvey was a MTGE director from at least

2011 to May 2016.  Defendant Harvey is the Chairman of the Audit Committee and has been since at least March 2009.  Defendant Harvey is a member of the Compensation and Corporate Governance Committee and has been since at least July 2016, and was previously a member of the Compensation and Corporate Governance Committee from at least March 2009 to at least March 2013.  Defendant Harvey is a citizen of Virginia.

19.     Defendant Malon Wilkus ("Wilkus") was AGNC's CEO and Chairman of the Board and a director from January 2008 to March 2016.  Defendant Wilkus was also AGNC's President from January 2008 to April 2011.  Defendant Wilkus was the AGNC Manager's CEO from April 2011 to March 2016.  Defendant Wilkus is the CEO of American Capital and has been since 1986 and Chairman and has been since 1998.  Defendant Wilkus was also American Capital's Chairman from 1986 to 1997 and Vice Chairman from 1997 to 1998.  Defendant Wilkus is the President of ACAM and has been since February 2011.  Defendant Wilkus was also the CEO of ACAM from February 2011 to March 2016.  Defendant Wilkus was also the CEO of ACMM from April 2011 to March 2016.  Defendant Wilkus is CEO of American Capital CLO Management, LLC and has been since July 2013.  Defendant Wilkus is the CEO of American Capital Leveraged Finance Management, LLC and has been since at least April 2016. Defendant Wilkus is CEO of ACSF Funding I, LLC and has been since at least April 2015. Defendant Wilkus was the CEO of ACAS Funding I, LLC and of ACAS Funding II, LLC in at least April 2015.  Defendant Wilkus is ACSF's Chairman and CEO, and a director and has been since February 2013.  Defendant Wilkus is the American Capital ACSF Management, LLC's (the "ACSF Manager") CEO and has been since February 2013.  Defendant Wilkus was MTGE's Chairman, a director, and CEO from March 2011 to March 2016.  Defendant Wilkus was also the MTGE Manager's CEO from April 2011 to at least March 2016.  Defendant Wilkus is European Capital Limited's Chairman and a director and has been since least August 2005.

Defendant Wilkus is Chairman and a director of European Capital Asset Management Limited and has been since at least October 2013.  Defendant Wilkus is a citizen of Maryland.

20.     Defendant John R. Erickson ("Erickson") was AGNC's CFO and Executive Vice President from January 2008 to July 2016; and a director from February 2013 to May 2016. Defendant Erickson was also the AGNC Manager's Treasurer from April 2011 to at least July 2016; and Executive Vice President from July 2011 to at least July 2016.  Defendant Erickson is American Capital's CFO has been since February 1998 and President, Structured Finance and has been since July 2008.  Defendant Erickson was also American Capital's Executive Vice President from at least March 2001 to at least April 2008; Secretary from at least March 2000 to at least March 2004; and Vice President from at least 1998 to at least April 2000.  Defendant Erickson is the Executive Vice President and Treasurer of American Capital CLO Management, LLC and has been since at least April 2015.  Defendant Erickson is the Executive Vice President and Treasurer of ACSF Funding I, LLC and has been since at least April 2015.  Defendant Erickson is the Executive Vice President and Treasurer of American Capital Leveraged Finance Management, LLC and has been since at least April 2016.  Defendant Erickson was the Executive Vice President and Treasurer of ACAS Funding I, LLC and of ACAS Funding II, LLC in at least April 2015.  Defendant Erickson is also the Executive Vice President and Treasurer of ACAM and has been since February 2011.  Defendant Erickson is also the Executive Vice President and Treasurer of ACMM and has been since July 2011.  Defendant Erickson is ACSF's Executive Vice President, CFO, and Assistant Secretary and has been since February 2013.  Defendant Erickson is the ACSF Manager's Executive Vice President and Treasurer and has been since February 2013.  Defendant Erickson was MTGE's Executive Vice President and CFO from March 2011 to July 2016; and a director from at least March 2011 to May 2016.  Defendant Erickson was also the MTGE Manager's Executive Vice President from

July 2011 to at least July 2016; and Treasurer from April 2011 to at least July 2016. Defendant Erickson is a citizen of Maryland.

21.     Defendant Samuel A. Flax ("Flax") was AGNC's Executive Vice President and Secretary from January 2008 to at least June 2016; and a director from July 2011 to May 2016. Defendant Flax was also the AGNC Manager's Chief Compliance Officer from February 2012 to at least June 2016; Executive Vice President from July 2011 to at least June 2016; and Secretary from April 2011 to at least June 2016. Defendant Flax is American Capital's Executive Vice President and General Counsel and has been since January 2005 and Chief Compliance Officer and Secretary and has been since at least March 2005. Defendant Flax is also the Executive Vice President, Chief Compliance Officer, and Secretary of ACAM and has been since February 2011. Defendant Flax was the Executive President, Chief Compliance Officer, and Secretary of ACMM and has been since at least 2011. Defendant Flax is ACSF's Executive Vice President and Secretary and has been since February 2013 and Chief Compliance Officer and has been since July 2013. Defendant Flax is also the ACSF Manager's Executive Vice President, Chief Compliance Officer, and Secretary and has been since February 2013. Defendant Flax is the Executive Vice President, Chief Compliance Officer, and Secretary of American Capital CLO Management, LLC and has been since at least April 2015. Defendant Flax is the Executive Vice President and Secretary of American Capital Leveraged Finance Management, LLC and has been since at least April 2016. Defendant Flax is the Executive Vice President and Secretary of ACSF Funding I, LLC and has been since at least April 2015. Defendant Flax was the Executive Vice President and Secretary of ACAS Funding I, LLC and of ACAS Funding II, LLC in at least April 2015. Defendant Flax was MTGE's Executive Vice President and Secretary from March 2011 to at least June 2016; and a director from February 2013 to May 2016. Defendant Flax was also the MTGE Manager's Chief Compliance Officer from February 2012 to at least June 2016;

Executive Vice President from July 2011 to May 2016; and Secretary from April 2011 to at least June 2016.  Defendant Flax is a director of European Capital Asset Management Limited and has been since at least October 2013.  Defendant Flax is a citizen of Maryland.

22.     Defendant Robert M. Couch ("Couch") was AGNC's Lead Independent Director from at least March 2014 to at least March 2016, and a director from July 2011 to May 2016. Defendant Couch was a member of the Audit Committee from at least March 2012 to at least March 2016.  Defendant Couch was a member of the Compensation and Corporate Governance Committee from at least March 2012 to at least March 2014.  Defendant Couch is a MTGE director and has been since at least August 2011.  Defendant Couch is a citizen of Alabama.

23.     Defendant Randy E. Dobbs ("Dobbs") was an AGNC director from at least May 2008 to May 2016.  Defendant Dobbs was a member of the Audit Committee from at least March 2009 to at least March 2013.  Defendant Dobbs was Chairman of the Compensation and Corporate Governance Committee from at least March 2009 to May 2016.  Defendant Dobbs is MTGE's Chairman of the board and Lead Independent Director and has been since May 2016, and a director and has been since at least August 2011.  While in possession of material, non-public information concerning AGNC's true business health, defendant Dobbs sold 4,500 shares of his stock for $86,301 in proceeds.  Defendant Dobbs is a citizen of South Carolina.

24.     Defendant Alvin N. Puryear ("Puryear") was an AGNC director from at least May 2008 to May 2016.  Defendant Puryear is a director of American Capital and has been since at least September 1998.  Defendant Puryear was the Chairman of the board of MTGE from March 2016 to May 2016; and a director of MTGE from at least August 2011 to May 2016.  Defendant Puryear is a citizen of Virginia.

25.     Defendant ACAM is a Delaware limited liability company and is a wholly owned portfolio company of American Capital.  Prior to the July 1, 2016 acquisition, defendant ACAM

owned all of the issued and outstanding limited liability company interests in ACMM.   On information and belief, defendant ACAM is a citizen of Delaware and Maryland.

26.     The defendants identified in ¶¶14-15, 19-21 are referred to herein as the "Officer Defendants."   The defendants identified in ¶¶14, 16-24 are referred to herein as the "Director Defendants."   Collectively, the defendants identified in ¶¶14-24 are referred to herein as the "Individual Defendants."

**The Individual Defendants Have Made Millions of Dollars from Supporting American Capital and Its Entities**

27.     As the following tables show, the Officer Defendants have made over $170 million through their various positions at American Capital related entities:

| Defendant | American Capital Entity | Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|---|
| | | 2015 | $1,085,000 | - | - | $3,000,000 | $7,950 | $4,092,950 |
| | | 2014 | $1,085,000 | - | - | $2,700,000 | $7,800 | $3,792,800 |
| | | 2013 | $1,085,000 | $226,446 | $1,262,967 | $2,700,000 | $7,650 | $5,282,063 |
| | | 2012 | $1,085,000 | - | $2,431,302 | $2,205,000 | $7,500 | $5,728,802 |
| | | 2011 | $1,085,000 | - | $4,377,098 | $1,950,000 | $7,350 | $7,419,448 |
| | | 2010 | $1,085,000 | - | $2,347,310 | $1,500,000 | $7,350 | $4,939,660 |
| | | 2009 | $1,085,000 | $236,817 | $1,335,533 | $1,500,000 | $7,350 | $4,164,700 |
| | | 2008 | $1,085,000 | $4,468,552 | $1,306,387 | $375,000 | $6,900 | $7,241,839 |
| | ACAS | | | | | | ACAS Total | $42,662,262 |
| John R. Erickson | | | | | | | Total | $42,662,262 |

| Defendant | American Capital Entity | Year | Salary | Total |
|---|---|---|---|---|
| | | 2016 | $800,000 | $800,000 |
| Peter J. Federico | AGNC | | AGNC Total | $800,000 |

| Defendant | American Capital Entity | Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|---|
| | | 2015 | $1,020,000 | - | - | $2,500,000 | $7,950 | $3,527,950 |
| | | 2014 | $1,020,000 | - | - | $2,250,000 | $7,800 | $3,277,800 |
| | | 2013 | $1,020,000 | $191,604 | $1,068,641 | $2,250,000 | $7,650 | $4,537,895 |
| | | 2012 | $1,020,000 | - | $2,057,211 | $1,837,500 | $7,500 | $4,922,211 |
| | | 2011 | $1,020,000 | - | $3,703,622 | $1,625,000 | $7,350 | $6,355,972 |
| | | 2010 | $1,020,000 | - | $1,986,144 | $1,250,000 | $7,350 | $4,263,494 |
| | | 2009 | $1,020,000 | $200,378 | $1,121,616 | $1,250,000 | $7,350 | $3,599,344 |
| | | 2008 | $1,020,000 | $3,384,845 | $894,652 | $312,500 | $6,900 | $5,618,897 |
| | ACAS | | | | | | | $36,103,563 |
| Samuel A. Flax | | | | | | **Total** | | **$36,103,563** |

| Defendant | American Capital Entity | Year | Salary | Total |
|---|---|---|---|---|
| | | 2016 | $4,384,744 | $4,384,744 |
| Gary Kain | AGNC | AGNC Total | | $4,384,744 |

| Defendant | American Capital Entity | Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|---|
| | | 2015 | $1,495,000 | $6,731,560 | - | $3,000,000 | $7,950 | $11,234,510 |
| | | 2014 | $1,495,000 | $10,000,000 | - | $5,400,000 | $7,800 | $16,902,800 |
| | | 2013 | $1,495,000 | $400,630 | $2,234,448 | $5,400,000 | $7,650 | $9,537,728 |
| | | 2012 | $1,495,000 | - | $4,301,473 | $4,410,000 | $7,500 | $10,213,973 |
| | | 2011 | $1,495,000 | - | $7,743,984 | $3,900,000 | $7,350 | $13,146,334 |
| | | 2010 | $1,495,000 | - | $4,152,871 | $3,000,000 | $7,350 | $8,655,221 |
| | | 2009 | $1,495,000 | $418,975 | $2,526,089 | $3,000,000 | $7,350 | $7,447,414 |
| | | 2008 | $1,495,000 | $7,651,423 | $1,993,454 | $750,000 | $6,900 | $11,896,777 |
| | ACAS | | | | | | | $89,034,757 |
| Malon Wilkus | | | | | | **Total** | | **$89,034,757** |

28.     Further, the Director Defendants have made nearly $10.5 million through their service at American Capital related entities:

| Defendant | American Capital Entity (Ticker) | Year | Fees Earned or Paid in Cash | Stock Awards | Total |
|---|---|---|---|---|---|
| | | 2015 | $90,000 | $125,000 | $215,000 |
| | | 2014 | $70,000 | $75,000 | $145,000 |
| | | 2013 | $73,000 | $93,600 | $166,600 |
| | | 2012 | $68,500 | $88,440 | $156,940 |
| | | 2011 | $29,000 | $86,940 | $115,940 |
| | AGNC | AGNC Total | | | $799,480 |
| | | 2015 | $60,000 | $75,000 | $135,000 |
| | | 2014 | $60,000 | $75,000 | $135,000 |
| | | 2013 | $66,500 | $37,845 | $104,345 |
| | | 2012 | $62,500 | $29,505 | $ 92,005 |
| | | 2011 | $27,500 | $29,100 | $ 56,600 |
| Robert M. Couch | MTGE | MTGE Total | | | $522,950 |
| | | Total | | | $1,322,430 |

| Defendant | American Capital Entity (Ticker) | Year | Salary | Stock Awards | Total |
|---|---|---|---|---|---|
| | | 2015 | $80,000 | $125,000 | $205,000 |
| | | 2014 | $60,000 | $75,000 | $135,000 |
| | | 2013 | $68,000 | $93,600 | $161,600 |
| | | 2012 | $68,500 | $88,440 | $156,940 |
| | | 2011 | $67,000 | $87,210 | $154,210 |
| | | 2010 | $70,000 | $38,595 | $108,595 |
| | | 2009 | $65,500 | $35,700 | $101,200 |
| | | 2008 | $41,667 | $5,991 | $ 47,658 |
| | AGNC | AGNC Total | | | $1,070,203 |
| | | 2015 | $70,000 | $75,000 | $145,000 |
| | | 2014 | $70,000 | $75,000 | $145,000 |
| | | 2013 | $71,500 | $37,845 | $109,345 |
| | | 2012 | $62,500 | $29,505 | $ 92,005 |
| | | 2011 | $27,500 | $29,100 | $ 56,600 |
| | MTGE | MTGE Total | | | $547,950 |
| Morris A. Davis | | Total | | $1,618,153 | |

| Defendant | American Capital Entity (Ticker) | Year | Salary | Stock Awards | Total |
|---|---|---|---|---|---|
| | | 2015 | $90,000 | $125,000 | $215,000 |
| | | 2014 | $70,000 | $75,000 | $145,000 |
| | | 2013 | $75,500 | $93,600 | $169,100 |
| | | 2012 | $69,000 | $88,440 | $157,440 |
| | | 2011 | $72,000 | $87,210 | $159,210 |
| | | 2010 | $75,000 | $38,595 | $113,595 |
| | | 2009 | $70,500 | $35,700 | $106,200 |
| | | 2008 | $45,000 | $5,991 | $ 50,991 |
| | AGNC | | AGNC Total | | $1,116,536 |
| | | 2015 | $70,000 | $75,000 | $145,000 |
| | | 2014 | $70,000 | $75,000 | $145,000 |
| | | 2013 | $74,000 | $37,845 | $111,845 |
| | | 2012 | $66,250 | $29,505 | $ 95,755 |
| | | 2011 | $30,000 | $29,100 | $ 59,100 |
| | MTGE | | MTGE Total | | $556,700 |
| Randy E. Dobbs | | | Total | | $1,673,236 |

| Defendant | American Capital Entity (Ticker) | Year | Salary | Stock Awards | Total |
|---|---|---|---|---|---|
| | | 2015 | $100,000 | $125,000 | $225,000 |
| | | 2014 | $75,000 | $75,000 | $150,000 |
| | | 2013 | $84,500 | $93,600 | $178,100 |
| | | 2012 | $85,000 | $88,440 | $173,440 |
| | | 2011 | $88,000 | $87,210 | $175,210 |
| | | 2010 | $89,500 | $38,595 | $128,095 |
| | | 2009 | $82,000 | $35,700 | $117,700 |
| | | 2008 | $51,667 | $5,991 | $ 57,658 |
| | AGNC | | AGNC Total | | $1,205,203 |
| | | 2015 | $75,000 | $75,000 | $150,000 |
| | | 2014 | $75,000 | $75,000 | $150,000 |
| | | 2013 | $84,500 | $37,845 | $122,345 |
| | | 2012 | $79,000 | $29,505 | $108,505 |
| | | 2011 | $35,000 | $29,100 | $ 64,100 |
| | MTGE | | MTGE Total | | $594,950 |
| | | 2015 | $75,000 | - | $75,000 |
| | | 2014 | $75,000 | - | $75,000 |
| | ACSF | | ACSF Total | | $150,000 |
| Larry K. Harvey | | | Total | $1,950,153 | |

| Defendant | American Capital Entity (Ticker) | Year | Salary | Stock Awards | Total |
|---|---|---|---|---|---|
| | | 2015 | $80,000 | $125,000 | $205,000 |
| | | 2014 | $60,000 | $75,000 | $135,000 |
| | | 2013 | $54,167 | $93,600 | $147,767 |
| | AGNC | | AGNC Total | | $487,767 |
| | | 2015 | $60,000 | $75,000 | $135,000 |
| | | 2014 | $60,000 | $75,000 | $135,000 |
| | MTGE | 2013 | $54,167 | $37,845 | $ 92,012 |
| | | | | MTGE Total | $362,012 |
| Prue B. Larocca | | | | Total    $849,779 | |

| Defendant | American Capital Entity (Ticker) | Year | Salary | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| | | 2015 | $435,000 | - | - | $435,000 |
| | | 2014 | $417,500 | - | - | $417,500 |
| | | 2013 | $359,000 | - | - | $359,000 |
| | | 2012 | $349,500 | - | - | $349,500 |
| | | 2011 | $362,500 | - | - | $362,500 |
| | | 2010 | $339,500 | $236,680 | $50,000 | $339,500 |
| | | 2009 | $392,000 | $88,605 | - | $392,000 |
| | | 2008 | $399,667 | $132,196 | $361,393 | $399,667 |
| | ACAS | | | | AGNC Total | $3,054,667 |
| Alvin N. Puryear | | | | | Total    $3,054,667 | |

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

29.    By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe AGNC and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage AGNC in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of AGNC and not in furtherance of their personal interest or benefit.

30.     To discharge their duties, the officers and directors of AGNC were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of AGNC were required to, among other things:

(a)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(b)     remain informed as to how AGNC conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

31.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of AGNC, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

32.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to drastically overpay fees to the AGNC Manager for years of plummeting performance and then drastically overpay for the Internalization, improper practices that wasted the Company's assets, and caused AGNC to incur substantial damage.

33.     The Individual Defendants, because of their positions of control and authority as

officers and/or directors of AGNC, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, AGNC has expended, and will continue to expend, significant sums of money.

### CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

34.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

35.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including stockholders of AGNC, regarding the Individual Defendants' management of AGNC's operations; (ii) drastically overpay fees to the AGNC Manager for years of plummeting performance; (iii) drastically overpay for the Internalization; and (iv) enhance the Individual Defendants' executive and directorial positions at AGNC and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

36.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, the Individual Defendants caused the Company to overpay for AGNC Manager's services and then for the AGNC Manager itself.

37.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, and waste of corporate assets, and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

38.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

39.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## AGNC'S BUSINESS AND OPERATIONS

40.     AGNC is a REIT that earns income primarily through investments in agency MBS.  As a REIT, AGNC is required by law to pay at least 90% of its profits as dividends.  The Company's "principal objective is to preserve [its net book value] … while generating attractive risk-adjusted returns for distribution to [its] stockholders through regular monthly dividends…."

41.     American Capital was the ultimate parent company of AGNC and the AGNC Manager, as well as several other related parties, including AGNC American Capital Agency

Management, LLC ("ACMM, LLC"), ACSF, the ACSF Manager, MTGE, and the MTGE Manager.[1]

42.     American Capital established administrative service agreements with its various subsidiaries prior to their individual IPO dates, pursuant to which AGNC, MTGE, and ACSF have no dedicated employees of their own.  Rather, the related managers of each company are responsible for the business activities and day-to-day operations and have access to the employees, infrastructure, business relationships, management expertise, information technologies, capital raising capabilities, legal compliance functions, accounting systems, treasury, and investor relations capabilities of both ACMM, LLC and American Capital.  As a result, all of the officers of AGNC, ACSF, and MTGE are also officers of their respective managers, ACMM, LLC, or American Capital.

43.     From 2008 through July 1, 2016, AGNC was externally managed by the AGNC Manager.  As noted in various AGNC Annual Reports, the AGNC Manager was responsible for administering the Company's business activities and day-to-day operations, subject to the supervision and oversight of AGNC's Board.

**AGNC REPEATEDLY PAID MASSIVELY UNFAIR FEES TO THE AGNC MANAGER, DESPITE YEARS OF PLUMMETING PERFORMANCE**

44.     The fee structure in the Management Agreement provided virtually no incentive for the AGNC Manager to fulfil AGNC's stated primary objective of seeking investments that provide "attractive risk-adjusted returns for distribution to [its] stockholders through regular monthly dividends."  Rather, pursuant to the Management Agreement, the Company paid the AGNC Manager a monthly fee equal to one-twelfth of 1.25% of AGNC's month-end stockholder's equity (with certain adjustments), ***regardless of the performance of the investment***

---

[1] Prior to July 1, 2016, AGNC and the AGNC Manager were subsidiaries of ACMM, LLC, a subsidiary of American Capital, and thus were subsidiaries of American Capital.

*portfolio*.  Over the past four fiscal years, AGNC has paid the AGNC Manager well over $100 million per year in fees, totaling nearly half a billion dollars.  Specifically, the Company paid $116 million in 2015, $136 million in 2014, $113 million in 2013, and $113 million in 2012.

45.     During the same period, the Company's performance significantly deteriorated. In fact, from the third quarter of 2012 through the end of 2015, AGNC's stock price continuously diminished while the Company repeatedly slashed dividends.   As detailed in the following graphs, from the third quarter of 2012 through the last quarter of 2015, AGNC's stock price decreased by almost half, from an average of $34.65 to an average of $18.16, while the Company's quarterly dividend payouts decreased by over 52%, from $1.25 per quarter to a mere $0.60 per quarter:





46.     Further, on February 1, 2016, the Company announced that for the full year 2015, AGNC suffered an economic loss of -2.6%, as well as a decrease in book value of $0.41 per share.   Worse, in August 2016, AGNC again slashed its dividends, this time to an effective payout of $0.54 per quarter.   Despite these disastrous results, in the first half of 2016 alone, AGNC paid fees to the AGNC Manager totaling approximately $52 million, equating to $104 million on an annualized basis.

**THE BOARD UTTERLY FAILED TO ENFORCE AGNC'S RIGHT TO ENSURE MANAGEMENT FEES WERE FAIR**

47.     Pursuant to the Management Agreement, the Management Agreement was deemed to automatically renew each year for an additional one year period, unless the Company or the AGNC Manager elected not to renew.   Further, the Management Agreement provided the Board with contractual rights to cancel the agreement upon 180 days' written notice to the AGNC Manager.   If AGNC terminated without cause, the Company would be forced to pay the AGNC Manager a staggering penalty of three times the average annual management fee paid during the preceding two year period.   Nonetheless, the Board could avoid paying any penalties

for termination if a majority of the independent directors determined the fees were unfair, or could otherwise force the AGNC Manager to charge fair fees.

48.     In particular, section 10(d) of the Management Agreement provided that if the Board simply notified the AGNC Manager that a majority of the independent directors determined the fees were unfair, the AGNC Manager would be forced to either: (i) agree to adjust prices and continue to manage the AGNC at a fair price, or (ii) allow AGNC to terminate the agreement with no penalties.  Specifically, section 10(d) stated:

> (d) *Unfair Manager Compensation*. Notwithstanding the provisions of subsection (c) above, if the reason for nonrenewal specified in the Company's Termination Notice is that a majority of the Independent Directors have determined that the Management Fee payable to the Manager is unfair, the Company shall not have the foregoing nonrenewal right in the event the Manager agrees that it will continue to perform its duties hereunder during the Automatic Renewal Term that would commence upon the expiration of the Initial Term or then current Automatic Renewal Term at a fee that the majority of the Independent Directors determine to be fair; *provided, however*, the Manager shall have the right to renegotiate the Management Fee by delivering to the Company, not less than 120 days prior to the pending Effective Termination Date, written notice (a "*Notice of Proposal to Negotiate*") of its intention to renegotiate the Management Fee. Thereupon, the Company and the Manager shall endeavor to negotiate the Management Fee in good faith. Provided that the Company and the Manager agree to a revised Management Fee or other compensation structure within sixty (60) days following the Company's receipt of the Notice of Proposal to Negotiate, the Termination Notice from the Company shall be deemed of no force and effect, and this Agreement shall continue in full force and effect on the terms stated herein, except that the Management Fee or other compensation structure shall be the revised Management Fee or other compensation structure then agreed upon by the Company and the Manager. The Company and the Manager agree to execute and deliver an amendment to this Agreement setting forth such revised Management Fee or other compensation structure promptly upon reaching an agreement regarding same. In the event that the Company and the Manager are unable to agree to a revised Management Fee or other compensation structure during such sixty (60) day period, this Agreement shall terminate on the Effective Termination Date and the Company shall be obligated to pay the Manager the Termination Fee upon the Effective Termination Date.

49.     Although the Board had a contractual right to force the AGNC Manager to charge fair fees or, if not, forego collecting a termination fee, the Board instead determined to continue

to cause or allow the Company to pay the AGNC Manager exorbitant fees for years, despite the Company's woefully deteriorating performance.

## THE BOARD AGREES TO PURCHASE THE AGNC MANAGER
## FOR AN EXORBITANT PRICE

50.     On May 23, 2016, AGNC announced that it had agreed to the Internalization, wherein the Company would acquire AGNC and become an internally-managed REIT.   The Internalization was completed on July 1, 2016, for a staggering $562 million in cash.

51.     The Internalization grossly overvalues the AGNC Manager.   As an initial matter, the vast majority of the AGNC Manager's revenues were generated from fees paid by AGNC, and AGNC has effectively admitted that the Company grossly overpaid for such management services.   In fact, a June 1, 2016 presentation, filed by AGNC with the SEC, admitted that the expected $108 million in fees that were to be paid to the AGNC Manager in 2016 could be internally "replaced by compensation and benefits expenses" of just $43 million.   Importantly, that $43 million also appears to cover compensation and benefits expenses associated with the external management of another related party MTGE, thus the projected cost to manage AGNC is actually lower than $43 million.   Tellingly, to date AGNC has utterly refused to disclose any valuation methods that were used to support the $562 million purchase.

52.     Further, if the Board had exercised its right to cancel the Management Agreement under section 10(d), the Company would not have needed to go through with the Internalization. AGNC could have just brought its management in-house like it is now doing.

53.     It appears that several former Board members were vehemently opposed to the Internalization.   Indeed, just one day before it was announced, five members of AGNC's then current Board abruptly and unexpectedly resigned effective immediately.    Although the Company has refused to provide any explanation for these resignations, the timing supports that

either these Board members were forced out or resigned as a result of their concerns over the pricing of the Internalization.

## DAMAGES TO AGNC

54.     As a result of the Individual Defendants' improprieties, for years AGNC paid over $100 million per year in excessive fees to the AGNC Manager in exchange for services that the Company has admitted were worth less than $50 million per year.  Further, the Individual Defendants caused or allowed AGNC to enter into the Internalization for more than half a billion dollars, which appears to have valued the AGNC Manager based largely on the excessive fees that it received from AGNC, which the Company has admitted were overvalued by as much as 250%.

55.     AGNC's gross overpayment of management fees also damaged its reputation within the business community and in the capital markets.  In addition to price, AGNC's current and potential investors consider a REIT's ability to keep costs reasonable and fair.  Investors are less likely to invest in REITs that mismanage or otherwise squander investment money.  AGNC's ability to attract investors is now impaired.  In addition, the Company stands to incur higher marginal costs of capital and debt because the perceived risks of investing in and lending money to the Company.

56.     Further, as a direct and proximate result of the Individual Defendants' actions, AGNC has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to, costs incurred from compensation and benefits paid to the defendants who have breached their duties to AGNC.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

57.     Plaintiff brings this action derivatively in the right and for the benefit of AGNC to redress injuries suffered, and to be suffered, by AGNC as a direct result of breaches of fiduciary

duty, and waste of corporate assets, as well as the aiding and abetting thereof, by the Individual Defendants.  AGNC is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

58.     Plaintiff will adequately and fairly represent the interests of AGNC in enforcing and prosecuting its rights.

59.     Plaintiff was a stockholder of AGNC at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current AGNC stockholder.

60.     The current Board of AGNC consists of the following four individuals: defendants Kain, Larocca, Davis, and Harvey.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because Defendants Kain, Larocca, Davis, and Harvey's Conduct Is Not a Valid Exercise of Business Judgment**

61.     Defendants Kain, Larocca, Davis, and Harvey's challenged misconduct at the heart of this case constitutes a threat to the Company's very survival.  As the ultimate decision-making body of the Company, the Board affirmatively adopted, implemented, and condoned a business strategy based on deliberate and widespread improper activities, including paying hundreds of millions of dollars in excessive management fees to a related party in exchange for several years of consistently plummeting management performance, a decision that constitutes a blatant waste of corporate assets.  Causing the Company to engage in the improper tactics with related parties is not a protected business decision and such conduct can in no way be considered a valid exercise of business judgment.  Further, the consideration to be paid by the Company to acquire the AGNC Manager is so clearly exorbitant that the decision of the Board to enter into the Internalization can in no way be considered a valid exercise of business judgment.  Accordingly, demand on the Board is excused.

**Demand Is Excused Because Defendants Kain, Larocca, Davis, and Harvey Face a Substantial Likelihood of Liability for Their Misconduct**

62.     As alleged above, defendants Kain, Larocca, Davis, and Harvey breached their fiduciary duties of loyalty and caused the Company to pay the grossly unfair management fees for years to a related party, despite continuing poor performance.  The Company has effectively admitted that the fees paid were upwards of 250% higher than the actual services were worth. Further, defendant Kain directly benefited from those improper fees as AGNC Manager's President since April 2011.

63.     Defendant Kain stood on both sides of the transactions challenged here as President of the AGNC Manager and American Capital Management LLC.  Because Kain stood on both sides of the transactions and received a benefit not shared by the rest of the Company's stockholders, he is hopelessly conflicted.  Thus demand on Kain is excused.

64.     Defendants Larocca, Davis, Harvey, and Kain will not vote to initiate litigation against the remaining Individual Defendants because of their ties to American Capital, including American Capital's CEO.  As detailed above, the Individual Defendants all have ties to American Capital or an affiliate.  American Capital has, in turn, placed defendants Larocca, David, Harvey, and Kain on multiple American Capital controlled companies.   In particular, in addition to AGNC, defendants Larocca, Davis, and Harvey are all on the Board of MTGE.  Defendant Harvey is also on the Board of ACSF.  Pursuant to these positions, defendants Larocca, Davis, and Harvey receive hundreds of thousands of dollars in additional compensation.  Thus, to initiate litigation against American Capital's employees, including its CEO, risks not just their current Board positions, but board positions at the other American Capital, related entities and all future entities that American Capital is routinely creating.  Accordingly, defendants Larocca, Davis, Harvey, and Kain will not vote to initiate litigation because they are currently beholden to American Capital and will not risk future positions appointed by American Capital.

65.     Plaintiff has not made any demand on the other stockholders of AGNC to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     AGNC is a publicly held company with over 331 million shares outstanding and thousands of stockholders;

(b)     making demand on such a number of stockholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of stockholders; and

(c)     making demand on all stockholders would force plaintiff to incur excessive expenses, assuming all stockholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     The Individual Defendants owed and owe AGNC fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe AGNC the highest obligation of good faith, fair dealing, loyalty, and due care.

68.     The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.  More specifically, the Individual Defendants violated their duty of good faith by creating a culture of lawlessness within AGNC, and/or consciously failing to prevent to Company from engaging in the unlawful acts complained of herein.

69.     The Officer Defendants either knew, were reckless, or were grossly negligent in disregarding the illegal activity of such substantial magnitude and duration.  The Officer Defendants either knew, were reckless, or were grossly negligent in not knowing that AGNC was

grossly overpaying management fees to a related-party, the AGNC Manager, for years. Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

70.     Director Defendants, as directors of the Company, owed AGNC the highest duty of loyalty.  These defendants breached their duty of loyalty by causing or allowing AGNC to grossly overpay management fees to the AGNC Manager for years, and then grossly overpay to acquire the AGNC Manager in the Internalization.  Accordingly, the Director Defendants breached their duty of loyalty to the Company.

71.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, AGNC has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

72.     Plaintiff, on behalf of AGNC, has no adequate remedy at law.

<u>COUNT II</u>

**Against the Individual Defendants for Waste of Corporate Assets**

73.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74.     As a result of the wrongdoing detailed herein and by failing to conduct proper supervision, the Individual Defendants have caused AGNC to waste its assets by paying hundreds of millions of dollars in grossly unfair fees to the AGNC Manager for years of consistently diminishing management services, and then drastically overpaying to acquire the AGNC Manager in the Internalization.

75.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

76.     Plaintiff, on behalf of AGNC, has no adequate remedy at law.

## COUNT III

### Against Defendant ACAM for Aiding and Abetting Breach of Fiduciary Duty

77.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as fully set forth herein.

78.     Defendant ACAM knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Internalization, which, without such aid, would not have occurred.  Particularly, ACAM participated in and was vital in the Company overpaying for its own internal manager.

79.     As a direct and proximate result of defendant ACAM's aiding and abetting the Individual Defendants' breaches of fiduciary obligations, the Company has sustained, and will continue to sustain, irreparable harm for which there is no adequate remedy at law

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of AGNC, demands judgment as follows:

A.      Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties and waste of corporate assets;

B.      Determining that the Individual Defendants have violated their fiduciary duties to the Company;

C.      Directing AGNC to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect AGNC and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following Corporate Governance Policies:

1.      a proposal to strengthen the Company's controls over dealings with related parties;

2.      a proposal to strengthen the Company's controls over management fees;

3.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

4.      a provision to permit the stockholders of AGNC to nominate at least three candidates for election to the Board; and

5.      a proposal to strengthen AGNC's oversight of its operations;

D.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of AGNC has an effective remedy;

E.      Awarding to AGNC restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

F.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: September 21, 2016                    CUNEO GILBERT & LADUCA, LLP


                                             　/s/ Brendan S. Thompson　　
                                             JONATHAN W. CUNEO
                                             CHARLES J. LADUCA
                                             MATTHEW E. MILLER, Bar No. 19220
                                             BRENDAN S. THOMPSON, Bar No.
                                             18695
                                             4725 Wisconsin Ave., N.W.
                                             Washington, D.C. 20016
                                             Telephone: (202) 789-3960
                                             Facsimile: (202) 789-1813
                                             E-mail: jonc@cuneolaw.com
                                                     charles@cuneolaw.com
                                                     mmiller@cuneolaw.com
                                                     brendant@cuneolaw.com

                                             ROBBINS ARROYO LLP
                                             BRIAN J. ROBBINS
                                             CRAIG W. SMITH
                                             SHANE P. SANDERS
                                             600 B Street, Suite 1900
                                             San Diego, CA 92101
                                             Telephone: (619) 525-3990
                                             Facsimile: (619) 525-3991
                                             E-mail: brobbins@robbinsarroyo.com
                                                     csmith@robbinsarroyo.com
                                                     ssanders@robbinsarroyo.com

                                             Attorneys for Plaintiff

11147162

<u>VERIFICATION</u>

I, James Clem, hereby declare as follows:

I am the plaintiff in the within entitled action. I have read the Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty and Waste of Corporate Assets. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: _____9/13/16_____

_____
JAMES CLEM