IN RE AMERICAN CAPITAL AGENCY
CORP. STOCKHOLDER DERIVATIVE
LITIGATION

This Document Relates To:

ALL ACTIONS

Civil Action No. TDC-16-3215
(Consolidated with Civil Action No.
TDC-16-3310)

## MEMORANDUM OPINION

James Clem and William Wall, Plaintiffs in these consolidated actions, have brought suit derivatively on behalf of nominal defendant AGNC Investment Corporation ("AGNC"), alleging that certain AGNC officers and directors breached fiduciary duties and violated federal securities law in connection with a management contract with, and a later acquisition of, a related entity, and that defendant American Capital Asset Management, LLC ("ACAM") aided and abetted those violations. The same facts giving rise to this civil action (the "Maryland Action") also sparked litigation in the Delaware Court of Chancery (the "Delaware Action"), brought by a different plaintiff, H&N Management Group, Inc. & Aff Cos Frozen Money Purchase Plan ("H&N"), against AGNC and many of the same individuals named as Defendants here. Pending before the Court are two motions related to the Delaware Action: Defendants have filed a Motion to Stay Proceedings seeking a stay of the Maryland Action while the Delaware Action proceeds, and H&N has filed a Motion to Intervene requesting leave to intervene in this case in support of Defendants' Motion to Stay. For the reasons set forth below, both Motions are denied.

## BACKGROUND

### I.    The Amended Complaint

The Court summarizes the facts set forth in the Amended Complaint only to the extent necessary to resolve the Motions. Plaintiffs, both citizens of California, are shareholders of nominal defendant AGNC. AGNC is a Delaware-incorporated real estate investment trust ("REIT"), with principal executive offices in Bethesda, Maryland. Defendants Gary Kain, Peter J. Federico, Prue B. Larocca, Morris A. Davis, Larry K. Harvey, Malon Wilkus, John R. Erickson, Samuel A. Flax, Robert M. Couch, Randy E. Dobbs, and Alvin N. Puryear (the "Individual Defendants") have each served, at various times, as officers of AGNC, as members of the AGNC Board of Directors, or both. Defendant ACAM is a wholly owned portfolio company of American Capital Ltd. ("American Capital"), AGNC's parent company.

The claims in this case relate primarily to a series of transactions involving the management of AGNC. According to Plaintiffs, prior to May 23, 2016, AGNC was externally managed by a related entity, AGNC Management, LLC ("AGNC Management"), which was subject to the supervision and oversight of AGNC's Board. At the time, AGNC had no dedicated employees of its own. Rather, AGNC Management was responsible for administering AGNC's day-to-day business activities. AGNC and AGNC Management were both subsidiaries of American Capital. Other American Capital subsidiaries included MTGE Investment Corporation ("MTGE"), another REIT; MTGE Management, LLC ("MTGE Management"), which was responsible for administering MTGE's day-to-day operations; Defendant ACAM; and several other related entities. American Capital, AGNC, and AGNC Management, along with other American Capital subsidiaries, shared multiple officers and directors, some of whom are Defendants in this case.

The primary focus of the Amended Complaint is the contract that governed the relationship between AGNC and AGNC Management prior to May 23, 2016 (the "Management Agreement"). According to Plaintiffs, the terms of the Management Agreement required AGNC to pay AGNC Management "exorbitant fees in excess of $100 million" each year, regardless of the performance of AGNC's investment portfolio. Am. Compl. ¶ 6, ECF No. 39. Plaintiffs allege that the fees were unreasonable and in excess of the costs of services performed; subsidized the operations of MTGE and MTGE Management, whose Board of Directors, employees, and management overlapped with those of AGNC and AGNC Management; and ultimately ended up in the pockets of the Individual Defendants, who served as Board members and officers of AGNC, AGNC Management, MTGE, MTGE Management, and other American Capital entities, rather than being paid to shareholders in the form of dividends. Plaintiffs assert that the members of AGNC's Board of Directors owed a fiduciary duty to AGNC that required them to renegotiate or cancel the Management Agreement, but because they personally benefited from the payment of the fees, they failed to do so.

Plaintiffs also allege that AGNC's directors negligently made false and misleading statements relating to the Management Agreement in proxy statements issued between 2014 and 2016 (the "Proxy Statements"). The Proxy Statements acknowledged that AGNC would be forced to pay a penalty for terminating the Management Agreement without cause, but they failed to disclose or explain favorable provisions of the Management Agreement that provided opportunities to negotiate more reasonable terms. According to Plaintiffs, the Proxy Statements misled shareholders to believe that AGNC was locked into the Management Agreement unless it was willing to pay a large termination fee. Plaintiffs also assert that the Proxy Statements failed to disclose and explain the extent of AGNC's overpayment to AGNC Management or that

AGNC's management fees were being used to cover the external management of MTGE. Plaintiffs claim that had AGNC's shareholders been aware that the Proxy Statements were misleading, they would not have voted to reelect the Board.

The second focus of the Amended Complaint is the May 23, 2016 transaction that altered the relationship between AGNC and AGNC Management ("the Internalization"). On that date, AGNC announced that it would acquire American Capital Mortgage Management, LLC ("ACMM"), the parent company of AGNC Management, for $562 million in cash and become an internally-managed REIT. The $562 million was paid to ACAM, which at the time employed Defendants Wilkus, Erickson, and Flax as executives. According to Plaintiffs, the Internalization was damaging to AGNC because it cost $200 million more than AGNC would have had to pay had it simply terminated the Management Agreement and brought its management functions in-house. Plaintiffs claim that the Internalization grossly overvalued AGNC Management, the value of which was inflated due to the excessiveness of the management fees. Plaintiffs assert that ACAM knowingly assisted the Individual Defendants in breaching their fiduciary duties and that without its assistance, the Internalization would not have occurred.

## II.  Procedural History

On September 21, 2016, Plaintiff James Clem filed a shareholder derivative complaint on behalf of AGNC. Plaintiff William Wall filed a shareholder derivative complaint on September 30, 2016. Pursuant to a stipulation, the Court consolidated the cases on October 21, 2016. Plaintiffs filed their consolidated Amended Complaint on December 23, 2016, alleging against Defendants Couch, Davis, Dobbs, Erickson, Flax, Harvey, Larocca, Puryear, and Wilkus a violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a) (2012), (Count I); against all Individual Defendants a claim of breach of

fiduciary duty (Count II); and against ACAM a claim of aiding and abetting the breach of fiduciary duty (Count III). Plaintiffs seek a declaratory judgment, damages, equitable and injunctive relief, restitution, and costs.

Meanwhile, concurrent proceedings arising from many of the same facts were initiated in the Delaware Court of Chancery. On July 6, 2016, H&N served on AGNC a demand to inspect corporate books and records pursuant to Section 220 of the Delaware General Corporation Law, Del. Code Ann. tit. 8, § 220 (West 2006) (the "Section 220 Demand"). Section 220 permits any stockholder to "inspect for any proper purpose . . . [t]he corporation's stock ledger, a list of its stockholders, and its other books and records." Del. Code Ann. tit. 8, § 220(b)(1). After Defendants failed to produce books and records in response to the Section 220 Demand, H&N filed suit on July 19, 2016 in the Delaware Court of Chancery seeking production of the requested materials (the "Delaware 220 Action"). The Delaware 220 Action was resolved through the disclosure of certain books and records of AGNC to H&N.

On October 21, 2016, H&N filed a shareholder derivative lawsuit in the Delaware Court of Chancery on behalf of AGNC against current and former directors and officers of AGNC. *See H&N Mgmt. Grp., Inc. & Aff Cos Frozen Money Purchase Plan v. Couch, et al.*, No. 12847-VCMR (Del. Ch. Oct. 21, 2016). H&N's amended complaint, filed on December 12, 2016, asserts two counts of breach of fiduciary duty and one count of corporate waste in connection with the Management Agreement and the Internalization. H&N seeks a declaratory judgment, damages, disgorgement, and costs. A motion to dismiss H&N's amended complaint was filed in the Delaware Court of Chancery and has now been fully briefed.

**DISCUSSION**

I.     **Motion to Intervene**

H&N seeks intervention as of right in this case pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, permissive intervention under Rule 24(b). According to H&N, intervention is warranted because legal and factual determinations in the Maryland Action could "hinder and potentially even collaterally estop H&N from prosecuting derivative claims on AGNC's behalf in the Delaware Action." Mot. Intervene at 6, ECF No. 58-1. Defendants do not oppose H&N's motion to the extent H&N seeks a stay of the Maryland Action. Plaintiffs contend that intervention is unnecessary and unwarranted.

A.     **Legal Standards**

Rule 24 provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Accordingly, in addition to timeliness, intervention of right is dependent upon the proposed intervenor's fulfillment of three requirements: "interest, impairment of interest and inadequate representation." *Gould v. Alleco*, 883 F.2d 281, 284 (4th Cir. 1989); *see also Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981). All three requirements must be met. *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976).

Permissive intervention may be allowed "on timely motion" to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion under Rule 24(b), the Court "must consider whether the

6

intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). A decision to grant or deny permissive intervention otherwise lies within the sound discretion of the trial court. *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)).

## B. Intervention as of Right

Plaintiffs do not contest that H&N's Motion was timely filed, thus satisfying the threshold requirement for either form of intervention. Turning first to intervention of right, the Court concludes that H&N has failed to demonstrate a right to intervene under Rule 24(a). As for H&N's claimed interest in the case, H&N asserts that its filing of "substantially identical derivative claims arising from the same transactions and events" gives it a "significant and legally protectable interest in the subject matter of the litigation." Mot. Intervene at 5. In support of its argument, H&N notes the time and effort it spent investigating its derivative claims with the use of procedures under Section 220 and asserts that in the absence of intervention, legal and factual determinations made in the Maryland Action could hinder or estop its effort to pursue related claims in Delaware. However, as Plaintiffs correctly observe, in derivative litigation, the real party in interest is the corporation, not any given shareholder-plaintiff. *See, e.g., Ross v. Bernhard*, 396 U.S. 531, 538 (1970); *Bernstein v. Levenson*, 437 F.2d 756, 757 (4th Cir. 1971) (per curiam). H&N has identified no authority establishing that a shareholder-plaintiff's derivative interest on behalf of a corporation confers the type of interest that Rule 24 contemplates. *Cf. Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*, 332 F.3d 815, 825 (5th Cir. 2003) (holding that where litigants are "merely shareholders of the corporation, and any interest they claim in the main demand is a derivative interest," that interest is "not sufficient to maintain an intervention of right").

7

In any event, the Court need not decide whether H&N's interest is sufficient because H&N has failed to demonstrate impairment of interest and inadequacy of representation. H&N claims that its interests will be impaired absent intervention because it will be denied the opportunity to avoid potentially preclusive effects of any adverse rulings in this action. In *In re Ambac Fin. Grp., Inc. Derivative Litig.*, 257 F.R.D. 390 (S.D.N.Y. 2009), however, in which plaintiffs in a Delaware shareholder derivative lawsuit similarly sought to intervene in a related federal proceeding to avoid preclusion, the court recognized that the Delaware plaintiffs' interest would only be impaired if the federal plaintiffs could not represent their interests adequately:

> The disposition of this litigation may indeed preclude the Proposed Intervenors from ultimately pursuing their Delaware action. However, [Rule 24(a)] sets forth when a party may intervene as of right not for the purpose of permitting that party to litigate its claim, but rather for the purpose of making certain that the intervenor's interests are protected. The true party in interest in a derivative action such as this one is the corporation; therefore, denying intervention in this action will not impair the protection of that interest if the . . . plaintiffs who have brought this action derivatively on behalf of [the corporation] can represent that interest adequately.

*Id.* at 393 (internal citations omitted).

Ordinarily, the proposed intervenor's burden of showing inadequacy of representation is "minimal." *Newport News Shipbuilding & Drydock Co.*, 646 F.2d at 122 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). However, where, as here, "the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented" unless the proposed intervenor can show "adversity of interest, collusion, or nonfeasance." *Westinghouse Elec. Corp.*, 542 F.2d at 216. Plaintiffs and H&N lack adversity of interest because, as discussed above, the real party in interest in both cases is AGNC. *See Kamerman v. Steinberg*, 681 F. Supp. 206, 212 (S.D.N.Y. 1988) (finding that "unsupported speculations concerning collateral estoppel and *res judicata*" were insufficient to show adversity of interest). H&N has not alleged collusion. With respect to

nonfeasance, there is no indication that Plaintiffs' counsel has failed diligently to pursue this case. H&N criticizes Plaintiffs' failure to pursue a Section 220 demand and notes that Plaintiffs therefore lack access to the corporate books and records that H&N obtained through that action. However, disagreements over litigation strategy do not demonstrate that Plaintiffs' representation of H&N's interests is inadequate. *See Stuart v. Huff*, 706 F.3d 345, 354 (4th Cir. 2013) (holding that proposed intervenors did not demonstrate nonfeasance based on "reasonable litigation decisions . . . with which they disagree"); *Tansey v. Rogers*, No. 12-1049-RGA (Consl.), 2016 WL 3519887, at \*3 (D. Del. June 27, 2016) (denying intervention as of right where the proposed intervenor "has a disagreement with the parties as to litigation strategy, which is not a sufficient basis to find that Plaintiffs do not adequately represent the corporation's interest in the litigation"). The specific argument that failure to file a Section 220 action evinces inadequacy of representation has been rejected because "although it is certainly better a practice for stockholder plaintiffs to use 'the tools at hand' to thoroughly investigate derivative claims before filing suit," the failure to do so falls "into the category of an imperfect legal strategy and does not rise to the level of litigation management that was so grossly deficient as to render them inadequate representatives." *See Laborers' Dist. Council Constr. Indus. Pension Fund v. Bensoussan*, No. 11293-CB, 2016 WL 3407708, at \*12 (Del. Ch. June 14, 2016); *see also Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 618 (Del. 2013) (rejecting the argument that stockholders "who file quickly, without bringing a § 220 books and records action," are presumptively inadequate representatives).

Likewise, H&N's allegations that Plaintiffs' counsel plagiarized the complaint in the Delaware Action, even if true, do not demonstrate nonfeasance or inadequacy of representation. *See Bensoussan*, 2016 WL 3407708, at \*12 (rejecting the argument of inadequate representation

9

based on copying of allegations from an earlier filed complaint because there was "no explanation . . . as to how the copying of any of these allegations substantively impacted their litigation" and "[n]o contention has been made that their counsel are not experienced in corporate litigation, even if they did commit plagiarism"). Accordingly, H&N has failed to overcome the presumption of adequate representation and has not demonstrated the inadequate representation necessary to confer the right to intervene under Rule 24. *See In re Ambac Fin. Grp., Inc.*, 257 F.R.D. at 393-94.

## C.    Permissive Intervention

In the alternative, H&N contends that it should be permitted to intervene under Rule 24(b). H&N claims that it seeks to intervene "only for the limited purpose of supporting Defendants' Motion to Stay." Mot. Intervene at 11. Yet in the next breath H&N asks that the Court commit to entering orders without prejudice to H&N and other potential derivative plaintiffs, asserts that if the Court declines to enter a stay, "H&N should be permitted to fully participate in the Maryland Action, including in discovery," and advises that it "intends to seek leave to file an intervenor complaint and a motion to be appointed as lead plaintiff in the Maryland Action." *Id.* at 12. The Court declines to permit H&N to intervene for any of these purposes.

While it is the case that H&N's claims share a "common question of law or fact" with Plaintiffs' causes of action, *see* Fed. R. Civ. P. 24(b)(1)(b), intervention is not necessary for purposes of the motion to stay because the arguments in favor of a stay have been fully articulated by Defendants. Furthermore, the Court concludes that permitting intervention would open the door to undue delay and prejudice to the original Plaintiffs' rights. *See* Fed. R. Civ. P. 24(b)(3). As discussed below, the Court agrees with Plaintiffs that no stay is warranted. At that

10

point, entertaining H&N's efforts to attempt essentially to co-opt Plaintiffs' lawsuit and take over the litigation would further delay the case unnecessarily and likely would prejudice Plaintiffs' rights. The other offered reasons for intervention are based upon unsupported speculation concerning the substance and effect of future rulings regarding motions that have not yet been filed. Under these circumstances, the Court sees no productive purpose to intervention under Rule 24(b) and declines to exercise its discretion to permit it.

*Zimmerman v. Bell*, 101 F.R.D. 329 (D. Md. 1984), relied upon by H&N, does not alter this conclusion. In that case, the court permitted intervention under Rule 24(b) of a derivative shareholder-plaintiff who had been ordered by a state court to intervene in a concurrent federal proceeding, "presumably to avoid any duplicative litigation." *Id.* at 330. Finding that the federal plaintiffs' primary objection, based on subject matter jurisdiction, was unsupported, the court permitted intervention but restricted the type of claims the intervenor would be allowed to pursue and specifically ordered that "[t]he original plaintiffs' counsel will serve as lead trial counsel." *Id.* at 332. In this case, H&N seeks substantially broader relief than that granted in *Zimmerman*, and has not satisfied the Court that such relief would not lead to prejudice or undue delay. The Court understands H&N's concerns about the possible effects of *res judicata* or collateral estoppel, but there has been no showing that Plaintiffs' counsel would be unable to represent the same interests adequately. The possibility of preclusion is a necessary consequence of a parallel court system, and H&N's concerns, which are speculative at this stage, do not merit intervention. Accordingly, the Motion to Intervene is denied.

## II.    Motion to Stay

Defendants claim that the Maryland Action should be stayed in favor of the Delaware Action, which it characterizes as a parallel state proceeding, pursuant to *Colorado River Water*

*Conservation District v. United States*, 424 U.S. 800 (1976). Plaintiffs deny that the cases are parallel and further contend that a stay is unwarranted under the factors set forth in *Colorado River*.

## A.     Legal Standard

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *VonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (quoting *McClellan v. Carland*, 217 U.S. 268, 262 (1910)). However, under exceptional circumstances, a district court may abstain from the exercise of jurisdiction in favor of parallel state court proceedings based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14-15 (1983); *Kruse v. Snowshoe Co.*, 715 F.2d 120, 122-23 (4th Cir. 1983).

A party seeking abstention pursuant to *Colorado River* must show that two conditions are satisfied. "As a threshold requirement, there must be parallel proceedings in state and federal court." *Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002). Then, the moving party must establish that exceptional circumstances warrant abstention based on consideration of six factors: (1) whether the subject matter of the litigation involves property over which one court may exercise *in rem* jurisdiction; (2) whether the federal forum is inconvenient; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *See id.*; *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d

332, 341 (4th Cir. 2002). The decision to stay or dismiss the federal action "does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16. The Court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction," but rather "to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *VonRosenberg*, 849 F.3d at 167 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25-26).

**B.    Parallel Proceedings**

"State and federal suits are parallel only if substantially the same parties litigate substantially the same issues in different forums." *VonRosenberg*, 849 F.3d at 168 (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)). Furthermore, "even state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." *VonRosenberg*, 849 F.3d at 168. Consequently, suits may be deemed parallel only if the state action will "be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties." *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28).

According to Defendants, the Maryland Action and the Delaware Action are parallel because both cases involve derivative claims asserted by shareholders on behalf of AGNC against its directors and officers and revolve around the same factual allegations, namely that AGNC overpaid for both AGNC Management's external management services and, later, for the Internalization. Plaintiffs claim that the cases are not parallel because the Maryland Action involves a claim under Section 14(a) of the Exchange Act, which is based on allegedly false and

misleading statements included in the Proxy Statements, while the Delaware Action does not include a federal claim or any state claims based on improper disclosures.

Although at first glance the two cases appear to involve substantially similar issues, the presence of the Section 14(a) claim, over which federal courts have exclusive jurisdiction, establishes a crucial distinction between them. The United States Court of Appeals for the Fourth Circuit has not decided whether the presence in a federal case of a claim for which there is exclusive federal jurisdiction necessarily bars *Colorado River* abstention, based on a lack of parallel proceedings or otherwise. *See Kruse*, 715 F.2d at 123-24 (in a case involving an antitrust claim for which there is exclusive federal jurisdiction, affirming the district court's denial of a *Colorado River* stay based on its analysis of the six factors without addressing the issue of parallelism). But the circuits that have addressed this question have uniformly concluded that *Colorado River* abstention is unavailable when the federal proceeding involves exclusively federal claims. The United States Court of Appeals for the Seventh Circuit has held, in a case involving an exclusively federal claim under Section 10(b) of the Securities Exchange Act of 1934, that there is "no discretion to stay proceedings as to claims within exclusive federal jurisdiction" pursuant to *Colorado River*, based on the court's understanding of Congress's intent in conferring exclusive federal jurisdiction. *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 213-14 (7th Cir. 1988) (quoting *Silberkleit v. Kantrowitz*, 713 F.2d 433, 436 (9th Cir. 1983)). The United States Court of Appeals for the Ninth Circuit has similarly held that *Colorado River* abstention was "inapplicable" where the federal case involved antitrust claims, because "[t]here is no concurrent state and federal jurisdiction over the federal antitrust claims." *Turf Paradise, Inc. v. Ariz. Downs*, 670 F.2d 813, 820-21 (9th Cir. 1982). Likewise, the United States Court of Appeals for the Second Circuit has concluded that "abstention is clearly improper when a federal

14

suit alleges claims within the exclusive jurisdiction of the federal courts." *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 62 (2d Cir. 1986) (reversing a *Colorado River* stay based on the presence of an exclusively federal antitrust claim and an analysis of the six factors). The *Andrea* court explained the reason for such a rule:

> Absent broad state court jurisdiction that would enable the state court to dispose of the entire matter, including the issues before the federal court, abstention could hardly be justified on the grounds of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."

*Id.* (quoting *Colo. River*, 424 U.S. at 817).

Particularly instructive is the decision of the United States Court of Appeals for the Eighth Circuit in *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013), which framed the issue as one relating to the question of whether the federal and state proceedings are parallel. In *Cottrell*, different sets of shareholders brought nearly identical lawsuits in the Delaware Court of Chancery and the United States District Court for the Western District of Arkansas. Although "most of the issues raised in the Federal proceeding [were] duplicated in Delaware," the court concluded that the cases were not parallel because the federal case, like the present case, included a claim under § 14(a) of the Exchange Act. *See id.* at 1245. Notably, the court reached that conclusion despite the presence in the Delaware case of a proxy-misrepresentation claim that shared "a materiality element with section 14(a)," *id.* at 1242, because "granting a district court the discretion to pretermit [Exchange] Act claims, in favor of a state proceeding that lacks jurisdiction to hear them, demotes the [Exchange] Act claims to a secondary status and deprives plaintiffs of a forum to assert a remedy chosen by Congress," *id.* at 1247-48.

Thus, the Second, Seventh, Eighth, and Ninth Circuits uniformly agree that the presence of a claim over which federal courts have exclusive jurisdiction bars application of *Colorado River* abstention because "[w]hen exclusive federal jurisdiction is at play, abstention would run

counter to Congress' determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary fora for handling such claims." *Id.* at 1246 (quoting *Andrea Theatres, Inc.*, 787 F.2d at 63). "The grant of such jurisdiction could be seriously hampered if federal courts exercised discretionary power to await the outcome of related state court proceedings." *Andrea Theatres, Inc.*, 787 F.2d at 63. Recognizing this important federal interest, this Court concludes that, at a minimum, the presence of an exclusive federal claim is a strong consideration weighing against abstention. *See Kruse*, 715 F.2d at 124; *Medema*, 854 F.2d at 215. The unpublished, district court cases relied upon by Defendants are therefore unpersuasive because they fail to give appropriate weight to this federal interest. *See Gerbino v. Sprint Nextel Corp.*, No. 12-2722-CM, 2013 WL 2405558, at *10-11 (D. Kan. May 31, 2013); *Krieger v. Harris Teeter Supermarkets, Inc.*, No. 3:13CV543, 2013 WL 5304847, at *4-6 (W.D.N.C. Sept. 19, 2013); *Int'l Jensen Inc. v. Emerson Radio Corp.*, No. 96-C-2816, 1996 WL 494273, at *6-7 (N.D. Ill. Aug. 27, 1996).

Here, the argument that the Maryland Action and Delaware Action are parallel is even less compelling than in *Cottrell*. Not only is there a federal claim over which the state court lacks jurisdiction, but unlike in *Cottrell*, the Delaware Action does not include a proxy-misrepresentation claim arguably analogous to the Section 14(a) claim. In fact, the Delaware Action does not include any state law claim based on the allegations of misleading disclosures underpinning Plaintiffs' Section 14(a) claim. Consequently, the *Cottrell* court's observation that "[i]f the Delaware action proceeds, it will not directly adjudicate the . . . shareholders' potential [Exchange] Act claims," and its reasoning that the "resulting divergence of the Federal and Delaware proceedings . . . casts doubt on the parallel nature of the proceedings," applies with even more force in this case. *See id.* at 1247. *See also Gannett Co.*, 286 F.3d at 742-43

(determining that state and federal cases were not parallel where they involved "different issues with different requisites of proof"). Thus, because the Maryland Action involves an exclusively federal claim that the Delaware Court of Chancery lacks jurisdiction to address, and because that claim is based on factual allegations not raised in the Delaware Action, the Court concludes that the Delaware Action will not "be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties." *VonRosenberg*, 849 F.3d at 168 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28). Accordingly, the cases are not parallel, and *Colorado River* abstention is not warranted.

## C. Exceptional Circumstances

Even if the cases were parallel, the Court would still deny the Motion because Defendants have failed to demonstrate that "exceptional circumstances" warrant a stay. *See New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991) ("The district court must . . . exercise its discretion in accordance with the *Colorado River* exceptional circumstances test." (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19)). Specifically, Defendants have failed to demonstrate that the six *Colorado River* factors weigh in favor of abstention.

### 1. *In Rem* Jurisdiction and Inconvenience of the Federal Forum

Defendants concede that the first two factors, whether the subject matter of the litigation involves property over which the first court may assume *in rem* jurisdiction and whether the federal forum is inconvenient, are inapplicable. However, the Court does not therefore consider these factors neutral. *See Gannett Co.*, 286 F.3d at 748 n.10 (stating that "[i]n the context of *Colorado River* abstention," it is "inaccurate" to state that factors that do not favor abstention are "of no weight"). "[W]ith regard to parallel state and federal proceedings, the Supreme Court has

17

held, over and over . . . that in the usual case the federal courts *must* hear the cases that fall within their jurisdiction." *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992). Thus, the Court's task is to "ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of" its jurisdiction. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25-26. Accordingly, the absence of property over which the state court may exercise *in rem* jurisdiction, and the lack of any compelling argument that the federal forum is less convenient than the state court, both weigh against abstention. *See Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 209 (4th Cir. 2006) (concluding that the first and second factors weighed against abstention where they were inapplicable).

### 2. Piecemeal Litigation

Defendants argue that in the absence of a stay of the present case, piecemeal litigation will result. The mere existence of concurrent litigation, however, does not warrant abstention. *See Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 465-66 (4th Cir. 2005) ("The threat of piecemeal litigation in the sense that two cases proceed simultaneously . . . is not sufficient to support a decision to abstain under *Colorado River*."). Rather, Defendants must show some threat of inefficiency or inconsistent results "beyond those inherent in the duplicative nature of these proceedings." *Gannett Co.*, 286 F.3d at 746.

Here, Defendants' primary argument against concurrent litigation is the potential for inconsistent results that may have preclusive effect. However, the "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colo. River*, 424 U.S. at 816. Nor are "*res judicata* problems" the "threat with which *Colorado River* was concerned"; rather, *res judicata* and collateral estoppel are prospects

"inherent in all concurrent litigation." *MidAtlantic Int'l, Inc. v. AGC Flat Glass N. Am.*, 497 F. App'x 279, 283 (4th Cir. 2012).

To the extent that Defendants contend that "[p]ermitting litigation to go forward simultaneously in both forums would impose significant burdens" on them, Mot. Stay at 14, the presence of an exclusively federal claim in this Court raises the prospect of piecemeal litigation regardless of whether a stay is granted, because the Delaware Court of Chancery lacks jurisdiction to decide that claim. *See Kruse*, 715 F.2d at 124 ("[W]here the district court is presented with a claim over which it has exclusive jurisdiction, a policy opposite to the policy of avoidance of piecemeal litigation is present."). Defendants appear to acknowledge this reality by suggesting, in the alternative, that the Court stay the state law claims while permitting the Exchange Act claim to proceed in federal court. But such an outcome would still necessitate piecemeal litigation in that the two cases would proceed simultaneously. Where Defendants have failed to demonstrate any particular consideration "that renders the fact of duplicative proceedings exceptionally problematic," *Gannett Co.*, 286 F.3d at 746, this factor does not weigh in favor of abstention.

### 3.  Order In Which Jurisdiction Was Obtained

Although Defendants have sought to create the impression that H&N filed their shareholder derivative case first by emphasizing their books and records request pursuant to Section 220, Plaintiffs actually filed the Maryland Action on September 21, 2016, before H&N filed the Delaware Action on October 21, 2016. Nevertheless, "the order of filing should be viewed pragmatically, meaning that priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Gannett Co.*, 286 F.3d at 747-48 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at

21). Although Defendants argue that the Delaware Action has progressed further in that a motion to dismiss has already been filed and briefed in that case, this argument carries little weight because the reason the Maryland Action has not progressed to that stage is Defendants' decision to file the Motion to Stay. Thus, where the Maryland Action was filed first, this factor weighs slightly against abstention.

### 4.    Source of Law

The fifth factor, whether the claims are to be decided under federal or state law, counsels against abstention.  Defendants argue that the Delaware Court of Chancery is better equipped to decide the claims arising under Delaware law.  However, "the presence of state law and the adequacy of state proceedings can be used only in rare circumstances to justify *Colorado River* abstention." *Gannett Co.*, 286 F.3d at 746 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26).  Federal courts regularly "grapple with questions of state law." *Gannett Co.*, 286 F.3d at 747.  Yet while this Court is capable of deciding issues arising under Delaware law, the Maryland Action involves a federal claim that the Delaware courts lack jurisdiction to review. *See Kruse*, 715 F.2d at 124 ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender, and . . . such consideration is even more significant when federal jurisdiction is exclusive." (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26)). Although Defendants, relying on *Gerbino*, argue that the issues underlying the Section 14(a) claim will necessarily be resolved in the Delaware Action, such a result inappropriately undermines the federal interest in having the federal claim specifically resolved. *See supra* part II.B.  Moreover, here, there is no equivalent state law claim relating to the failure to make disclosures in proxy statements that forms the basis of the Section 14(a) claim. *See Gerbino*, 2013 WL 2405558, at *5 (finding that a § 14(a) claim in a federal shareholder derivative suit and

20

a breach of fiduciary duty claim in a state shareholder derivative suit both required "a determination of whether the omitted and/or misleading facts were material" and that "the remedy offered by § 14(a) is duplicated in Delaware common law" (quoting *Int'l Jensen*, 1996 WL 494273, at *6)).

Finally, Defendants' assertion that the section 14(a) claim was added for tactical reasons, even if true, does not support the conclusion that a stay is warranted. Plaintiffs had the right to amend their Complaint under the Federal Rules of Civil Procedure, and while Defendants have cited case law warning of the danger that parties could add federal claims in order to avoid *Colorado River* abstention, *see Krieger v. Atheros Commc'ns, Inc.*, 776 F. Supp. 2d 1053, 1060 (N.D. Cal. 2011), they have not demonstrated that the addition of federal claims for tactical reasons is a proper justification for a stay. Accordingly, this factor weighs against abstention.

### 5. Adequacy of the State Proceeding

The final factor is whether the state court proceeding will provide an adequate remedy to protect Plaintiffs' rights. In *Moses H. Cone Memorial Hospital*, the Supreme Court stated that "an important reason against allowing a stay" was the "substantial room for doubt" that the nonmoving party could obtain relief in state court. 460 U.S. at 26. Although the Delaware court likely could provide relief on the state law claims, there is no "room for doubt" as to the federal claim: the Delaware court cannot provide a remedy for Plaintiffs' exclusively federal claim. *See id.*; *Chase Brexton Health Servs., Inc.*, 411 F.3d at 466 (holding that abstention was an abuse of discretion where "the district court had no reason to assume that the [state] proceedings were an adequate vehicle for the prompt resolution of claims" (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28)). Defendants' claim that relief on its state law breach of fiduciary duty claims will, as a practical matter, provide relief addressing the harm underlying the federal claim is not entirely

21

convincing where H&N's state law claims in the Delaware Action do not relate to the allegedly inadequate disclosures in the proxy statements upon which the federal claim is based. Accordingly, the sixth factor does not favor abstention.

Upon consideration of all of the factors, the Court concludes that the first, second, and fifth factors clearly weigh against abstention, and the remaining factors, at best, do not favor it. *See Gannett Co.*, 286 F.3d at 748 n.10. Where the Maryland Action does not relate to real property in Delaware, was filed first in an equally convenient forum, and has an exclusively federal claim addressing an alleged violation not addressed by the state law claims in the Delaware Action, the Court concludes that Defendants have failed to establish exceptional circumstances sufficient to warrant a stay under *Colorado River*.

### D.     Alternative Relief

In the alternative, Defendants argue that the Court should exercise its inherent discretion and control over its docket to stay the case or, at minimum, to stay the state law claims only. Where abstention under *Colorado River* is not warranted, it is highly dubious whether the Court has any proper basis nevertheless to stay the proceedings. *See Richmond, Fredericksburg & Potomac Ry. Co. v. Forst*, 4 F.3d 244, 254 (4th Cir. 1993) ("Because abstention is inappropriate under *Younger*, *Burford*, and *Colorado River*, the district court abused its discretion by abstaining in this case.") Even if the Court has such authority, it declines to do so. As discussed above, the federal claim must be resolved in federal court, and staying only the state law claims does not avoid concurrent litigation in both federal and state courts. Accordingly, the Motion will be denied.

## CONCLUSION

For the foregoing reasons, the Motion to Intervene and the Motion to Stay Proceedings are DENIED. Defendants are directed to file an Answer or other responsive pleading to the Amended Complaint within **14 days**. A separate Order shall issue.

Date: August 2, 2017

THEODORE D. CHUANG
United States District Judge